AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| IN THE MATTER OF THE SEARCH OF | ) |
| ALCATEL ONE TOUCH CELLULAR DEVICE | ) |
| WITH SERIAL NUMBER 014105001157453 | ) |
| ("SUBJECT DEVICE 1") | |

Case No.    1:15-MJ-**442**(DJS)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location):*

Please see attachment A

located in the _____Northern_____ District of _____New York_____ , there is now concealed
*(identify the person or describe the property to be seized):*

Please see attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒    evidence of a crime;
☐    contraband, fruits of crime, or other items illegally possessed;
☒    property designed for use, intended for use, or used in committing a crime;
☐    a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. 922 (g)(1) | Felon in Possession of a Firearm |

The application is based on these facts:

☒    Continued on the attached sheet.
☐    Delayed notice of _____ days (give exact ending date if more than 30 days):
is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the Applicant in Accordance with
the Requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure.

_____
*Applicant's signature*

_____
Special Agent Angelo Vara, ATF
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

---

Sworn to before me and signed in my presence.

Date:        11/23/2015

_____
Judge's signature

City and State:    Albany, NY

Hon. Daniel J. Stewart, U.S. Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ALCATEL ONE TOUCH CELLULAR DEVICE WITH SERIAL NUMBER 014105001157453 ("SUBJECT DEVICE 1") | Case No. 1:15-MJ- **442**  (DJS) |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Angelo Vara, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—a electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am commissioned as a Special Agent of the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF), and have been so employed since April 2000. In this capacity, I am responsible for the investigation of violations of federal criminal law, including violations of federal firearm statutes. I am a graduate of the Federal Law Enforcement Training Center in Glynco, GA, and as such I have received specialized training in the investigation of firearms related offenses, including the unlawful dealing in and using firearms.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.      An Alcatel One Touch Cellular Device with Serial Number 014105001157453, currently located at 11A Clinton Avenue, Albany, New York 12207 ("SUBJECT DEVICE 1").

5.      The applied-for warrants would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.      I am informed by Schenectady Police Department Officers Joseph Gatta and Kevin Rayball that on November April 28, 2015, Officers Gatta and Rayball encountered GIGGETTS in the vicinity of 1032 Crane Street in Schenectady, New York.  The officers were dispatched to the area in response to an individual calling the Schenectady Police department to report a person in possession of a handgun near 1032 Crane Street. The caller gave a description of the individual as wearing a blue Schenectady Community College hooded sweatshirt and stated that the individual sent a photograph via cellular phone showing the same individual holding a silver colored firearm.

4.      Officers Gatta and Rayball further informed me that upon arrival at 1032 Crane Street, the officers encountered an individual in clothing matching the caller's description standing in close proximity to 1032 Crane Street.  That individual began walking south on Sixth Avenue, away from Crane Street.  The officers stopped the individual who was later identified as GIGGETTS and asked him to remove his hands from the pockets of his sweatshirt.  GIGGETTS

2

complied with the officers' commands and was placed in handcuffs.  Officer Gatta asked

GIGGETTS if GIGGETTS had anything on his person that he shouldn't have.  GIGGETTS

replied "there is a small gun in my sweatshirt pocket, I just found it, it doesn't even work, there

is no firing pin." Officer Gatta then retrieved a silver colored, Raven .25 caliber pistol from

GIGGETTS' pocket and gave the firearm and a small amount of marihuana recovered from

GIGGETTS' pocket to officer Rayball.  Both items were processed and placed into evidence.

Officer Gatta also recovered SUBJECT DEVICE 1 from GIGGETTS person.  That device was

then placed in the custody of the Schenectady Police Department, who transferred custody of the

device to agents from the ATF. The device remains in ATF custody at 11A Clinton Avenue,

Albany, New York 12207.

## TECHNICAL TERMS

1.      Based on my training and experience, I use the following technical terms to

convey the following meanings:

     a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular

telephone) is a handheld wireless device used for voice and data communication

through radio signals.  These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones.  A wireless telephone usually contains a "call

log," which records the telephone number, date, and time of calls made to and

from the phone.  In addition to enabling voice communications, wireless

telephones offer a broad range of capabilities.  These capabilities include: storing

names and phone numbers in electronic "address books;" sending, receiving, and

3

storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to

4

store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This

5

removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

2.   Based on my training, experience, and research I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

3.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

6

4.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual

7

information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.   I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

5.      *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

6.      *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

8

the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Angelo Vara
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me
on November 20, 2015:

_____
Hon. Daniel J. Stewart
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

An Alcatel One Touch Cellular Device with Serial Number 014105001157453, currently located at 11A Clinton Avenue, Albany, New York 12207 ("SUBJECT DEVICE 1")

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 18 United States Code 922(g)(1) and involve Lawrence Giggetts since April 28, 2015, including:

   a.   Evidence of ownership of the target devices.

   b.   Communications to and from the target device relating to the commission of the crimes charged.

   c.   Photographs, videos or other media contained on Subject Device 1.

   d.   any information recording Lawrence Giggetts' schedule or travel on or about April 28, 2015;

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

   As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.